**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 12-CV-02789-WJM

LINDA KAY YELLIN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration

Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND REMANDING TO THE COMMISSIONER**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Linda Kay Yellin ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner") denying her application for disability and social security benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's denial of benefits is reversed and the case is remanded to the Commissioner for rehearing.

## I. BACKGROUND

Plaintiff filed an application for Social Security Disability Insurance (SSDI or Title II) benefits on September 17, 2009 (Admin. Record ("Tr.") at Tr. 178-79). Plaintiff's claim was initially denied and she requested a hearing. A hearing was held on May 13,

2011 (Tr. 151). Plaintiff testified at the hearing (Tr. 61-95), as did her husband, Steven Kliner (Tr. 96-99). A vocational expert (VE) also testified at the Defendant's request (Tr. 99-104). On June 1, 2011, the ALJ issued an Unfavorable Decision (Tr. 39-57). On August 24, 2012, the Appeals Council issued its Order declining to review the ALJ's Unfavorable Decision (Tr. 1-6). Following this, Plaintiff filed the instant Complaint to Review Decision of Commissioner of Social Security. (ECF No. 1.)

Plaintiff, who was born on October 18, 1949, was nearly 59 years old as of her alleged onset date of August 24, 2008. She was 61 years old as of the date of the hearing (Tr. 62). Plaintiff completed high school and had several years of postsecondary education (Tr. 198). Her past work was as an office manager, a research administrator, an office administrator, and an executive assistant (Tr. 63-68, 191-193, 201-209, 213).

Plaintiff alleged that her disability began on August 24, 2008, when she slipped and fell in a grocery store, injuring her cervical and thoracic spines, her knee and her shoulder. As a result of these injuries, she suffered from chronic headaches, neck and mid-back pain, fatigue, lapses in concentration, and numbness and tingling in her right upper extremity (Tr. 190).

**A. Relevant Medical Evidence**

Plaintiff sought physical therapy, after her fall in August 2008. Two months later, in October, Plaintiff saw Sonja K. Stilp, M.D. with complaints of pain in her thoracic spine (Tr. 314). She also claimed that she felt a generalized weakness and numbness in the palm of her right hand, since her fall at the grocery store (Tr. 314). On exam, Dr. Stilp found normal strength and reflexes, but moving Plaintiff's neck through its range of

motion caused pain (Tr. 314). MRIs of Plaintiff's cervical and thoracic spines showed a degree of degenerative disc disease, with narrowing of certain nerve passages (Tr. 315, 277-78). The doctor said that Plaintiff could continue physical therapy, but did not prescribe any pain relievers or other medications (Tr. 315).

Plaintiff was able to seek an evaluation from Cathleen Van Buskirk, M.D., in December 2008 (Tr. 273). She claimed to have headaches since her fall in August, and she claimed to have pain at a level of seven on a scale of zero to 10 (Tr. 273). Plaintiff was taking ibuprofen for this pain (Tr. 273). Dr. Van Buskirk found normal strength, sensation, and reflexes, but found limited range of motion with Plaintiff's neck (Tr. 273).

In a letter after this exam, Dr. Van Buskirk stated that Plaintiff should avoid lifting more than 20 pounds or "maintaining her head in flexion or extension for prolonged periods of time" (Tr. 276). She prescribed Plaintiff a muscle-relaxant medication to use as needed (Tr. 279), and suggested that cervical facet injections might significantly relieve Plaintiff's pain (Tr. 276).

In February 2009, Plaintiff returned to Dr. Stilp. A nerve conduction study was performed, which showed "normal" findings with no evidence of radiculopathy (Tr. 312). The doctor discussed the benign findings of the nerve conduction study with Plaintiff, and she prescribed a home cervical traction unit and commented that Plaintiff may continue with acupuncture, since she felt it gave her some relief (Tr. 317). The doctor discussed cervical facet injections as a possible therapy in the future if Plaintiff's symptoms did not improve further (Tr. 317).

In June 2009, Plaintiff began seeing chiropractor David Mamolen, D.C., for treatment (Tr. 328). She complained of continuing pain and headaches, expressing

frustration that she was limited in her ability to work with her "small farm and animals" (Tr. 329). Plaintiff showed improvement with disc decompression with the chiropractor, but the chiropractor felt that further treatment was required (Tr. 330). In a second letter, chiropractor Dr. Mamolen said that Plaintiff had improved, but that her headaches persisted (Tr. 347). He said that Plaintiff was "unable to hold a job" and was also unable to care for her animals on her small farm (Tr. 347). Dr. Mamolen gave largely similar opinions in a third letter the following year (Tr. 455-61).

Greth Brunsworth, M.D., saw Plaintiff in January 2010 (Tr. 427-38). Dr. Brunsworth observed that Plaintiff had pain with movement, but there was no evidence of radiculopathy (Tr. 437). Dr. Brunsworth's report noted that "[Plaintiff] has severe deficits in active range of motion of the cervical spine in all planes" (Tr. 430). Later in the report—*i.e.*, the assessment section—Dr. Brunsworth further noted Plaintiff "has severe limitations in active range of motion of the cervical spine" (Tr. 437). In April 2011, Dr Brunsworth continued to note this limitation—*i.e*, that Plaintiff had limited range of motion in her cervical spine, being "50% of normal" (Tr. 475).

After Plaintiff applied for disability, she was referred to a physician for an examination. That physician, John Mars, M.D., saw Plaintiff in March 2010 (Tr. 360). Dr. Mars reviewed records of Plaintiff's treatment as well as MRIs and the benign results of her nerve conduction study (Tr. 360). When meeting with Dr. Mars, Plaintiff admitted she was still taking only ibuprofen and a muscle-relaxant for her pain (Tr. 361). Plaintiff said she was able to walk one mile, shop, drive, perform light housecleaning, and garden as a hobby (Tr. 361). On exam, Dr. Mars found that Plaintiff had limited range of motion in her cervical spine (Tr. 362). He stated that Plaintiff could lift 25

pounds, but should avoid "heavy lifting" above shoulder level and "repetitive overhead reaching" due to the degeneration of her cervical spine (Tr. 362-63).

### B. The ALJ Decision

The ALJ applied the five step sequential evaluation process for the assessment of disability under the Act. 20 C.F.R. § 404.1520.[1] The ALJ found Plaintiff lacking in credibility (Tr. 47), and he rejected the opinions of chiropractor Dr. Mamolen (Tr. 48-49). The ALJ then found Plaintiff capable of light work, with further limitations to sitting or standing for no more than 30 minutes at one time, avoiding lifting or reaching above shoulder level, and avoiding climbing ladders or scaffolds (Tr. 46). Following evidence from the vocational expert—based on the ALJ's RFC determination—the ALJ went on to find Plaintiff not disabled at step four of the sequential evaluation process (Tr. 51-52).

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision on Plaintiff's entitlement to disability benefits to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, *1084 (10th Cir. 2007).

1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence, nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs*., 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant is represented by counsel. *Id.* at 480.

## III. ANALYSIS

The Appeals Council denied Plaintiff's request for review on the ALJ's decision. Plaintiff then filed this action seeking review of that decision. On appeal, Plaintiff raises several issues for consideration: (1) the ALJ's RFC finding does not include all of the limitations contained in the medical opinions that were adopted by the ALJ; (2) the ALJ's hypothetical questions to the vocational expert did not precisely reflect Plaintiff's limitations; (3) the ALJ's analysis of the weight afforded to the opinion of David Mamolen, D.C., is contrary to applicable law and not fully developed for the purposes of

review.

Because the Court finds that the ALJ’s RFC was not supported by substantial evidence, by *not* including all of the limitations contained in the medical opinions that were adopted by the ALJ, the Court finds that this error requires remand. Since these same limitations tainted the second issue—*i.e.* the ALJ's hypothetical questions to the vocational expert—the Court similarly finds that this issue warrants remand. And for the reasons stated below, the third issue also cuts in favor of Plaintiff, requiring remand and reconsideration of Dr. Mamolen’s evidence.

**A. RFC Not Supported by Substantial Evidence**

Plaintiff challenges the ALJ’s findings by contending that the ALJ erred in the RFC formulation because it did not contain any restrictions regarding positioning of Plaintiff's head/neck limitation. (ECF No. 15 at 10.) Failure to include this limitation, Plaintiff says, would likely have an effect on her ability to perform past relevant work. (*Id.*)

The RFC assessment is made by the ALJ “based on all the relevant evidence in [the claimant's] case record.” 20 C.F.R. § 404.1545(a)(1). The RFC is an assessment of the most a claimant can do despite his or her limitations. *Id.* Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs and laboratory findings, and medical source statements. Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996). An ALJ must make specific RFC findings based on all of the relevant evidence in the case record. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996):

> The RFC assessment must include a narrative discussion

> describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved

SSR 96–8p.

The ALJ’s findings regarding the RFC must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, the ALJ’s RFC is as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant is able to lift a maximum of fifteen pounds, with a frequent lift limit of five pounds, is able to stand or walk for approximately four to six hours, and occasionally crawl, squat, climb or bend. The claimant is limited to three-step unskilled, routine predictable tasks, in an environment with only occasional public interactions.

(R. at 19.)

Plaintiff challenges the ALJ’s determination on the basis RFC finding did not accurately reflect the opinions of Dr. Van Buskirk—an opinion the ALJ found was “generally consistent” with the opinions of other doctors in the record. (Tr. at 50). Plaintiff contends that ALJ’s RFC formulation was deficient because it did not contain any restrictions regarding positioning of Plaintiff's head/neck throughout the day; a limitation that was noted in in Dr. Van Buskirk’s opinion, among others. Because this limitation was not tracked to the RFC (without explanation), Plaintiff contends that this

constitutes reversible error. The Court agrees. The reason is three-fold.

First, the ALJ credited the opinion of Dr. Van Buskirk with regard to lifting limitations, but bypassed her recommendation that Plaintiff avoid maintaining her head in flexed or extension positions for prolonged periods of time in December 2008 (Tr. 273). By not including the head/neck limitation, this constitutes error in formulation of the RFC determination because it illustrates the ‘picking and choosing’ of evidence that Tenth Circuit authorities have shunned. Those same authorities apply here.[2] *See Hardman v. Barnhart*, 362 F.3d 676 (10th Cir. 2004); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.2007) (stating that“[a]n ALJ is *not* entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability”).

Second, and related to the first reason, the ALJ does not "explain how material inconsistencies in the evidence in the case record were considered and resolved." SSR 96–8p. For example, the ALJ said that the record "did not establish that [Dr. Van Buskirk] described deficits in flexion and extension persisted for 12 continuous months" (Tr. 48). But this is inconsistent with evidence in the record that Plaintiff *did* continue to experience severe deficits in range of motion of her cervical spine into April 2011 when she began seeing Dr. Gronseth (noting severe deficits in active range of motion of cervical spine in all planes at Tr. 430-437).[3] This limitation was also noted by Dr. Mars

---

[2] The Court notes that the ALJ tacitly noted that the head/neck limitation did not last twelve months in duration, but this finding is incongruent with two other doctors in the record. This is addressed at length with respect to the second reason going to this issue.

[3] In April 2011, Dr Brunsworth continued to note this limitation—*i.e,* that Plaintiff had limited range of motion in her cervical spine, being "50% of normal" (Tr. 475).

during 2010, the Social Security consultative examiner, who found that Plaintiff had limited range of motion in her cervical spine. (Tr. 362). Given that at least three doctors indicated Plaintiff's head/neck limitation—and that same limitation is not identified in the RFC—this begs the question as to how the RFC determination can viewed as being consistent with relevant evidence in the record? The short answer is: it cannot. As such, the Court finds that this deficiency warrants remand since it may have significant implications on the ALJ's nondisability finding (or at the least it may have tainted evidence supplied by the vocational expert).

And third, even if other evidence in the record could make good the ALJ's RFC determination, the fact that there are at least three doctors noting limitations with respect to the positioning of Plaintiff's head/neck condition suggests that there is at least an ambiguity in the record, which the ALJ should have addressed by seeking further evidence. Indeed, given the non-adversarial nature of the proceedings, the ALJ has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Baca* 5 F.3d at 480. The duty exists even when the claimant is represented by counsel. *Id.* at 480. This case is no exception.[4]

Accordingly, because the RFC determination lacks a limitation that goes to the *types* of jobs that Plaintiff could be employed in, the RFC is not based on substantial evidence. As such, the ALJ's decision is reversed and this case is remanded to the Commissioner for further proceedings. *See Richardson v. Perales*, 402 U.S. 389, 390

[4] Given the passing of time, the Court recommends that further evidence be elicited from an additional medical professional to determine the continued existence of the head/neck limitation so to mitigate any further the ambiguity in the record.

(1971).

**B. The ALJ's hypothetical questions to the vocational expert did not precisely reflect Plaintiff's limitations**

Plaintiff next contends that the ALJ's RFC was not supported by substantial evidence in the record. (ECF No. 15 at 20.) Specifically, Plaintiff contends that the ALJ erred with respect to the hypothetical questions proposed to the vocational expert because they did not reasonably reflect Plaintiff's limitations. *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993). Such error, Plaintiff says, derives from the RFC determination. Plaintiff argues that the ALJ erred on the basis that it lacks precision as to all of Plaintiff's medical limitations. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.") The Court agrees.

To support this finding, the Court incorporates by reference the omitted limitation discussed in the RFC analysis above. And by way of example, and to show how this omission constitutes cause for remand, the Court observes the following kinks in the ALJ's chain of reasoning: (1) Drs. Van Buskirk, Gonseth and Mars all indicated Plaintiff's range of motion limitation (but this was not identified in the RFC); (2) the ALJ said that it afforded all of these opinions weight and that they were "generally consistent" with each other (Tr. 50), (but the ALJ failed to incorporate all of there limitations into the RFC without explanation); and (3) the ALJ's hypothetical questions to the VE did not include the head/neck limitation from the evidence because it had not been included in the RFC findings.

In sum, the ALJ's error can be traced back to deficiencies in the RFC determination. Because the ALJ did not provide the vocational expert with the correct questions (because it did not contain the correct limitation), this mislead, or, at best, confused the vocational expert into believing that Plaintiff could undertake positions that she may well could not have had the correct question been proposed to the vocational expert.

The Court concludes that because the ALJ's omission is material , it is sufficient to taint the substantiality of the vocational expert's testimony. *See Hargis*, 945 F.2d at 1492. Since the evidence is tainted by omission, substantial evidence is lacking in this case for the ALJ to have made the correct determination as to Plaintiff's claim to disability benefits. The Court finds that remand is required to resolve these deficiencies.

**C. The ALJ Erred in Failing to Properly Evaluate Factors Pursuant to SSR 06-03p When Weighing David Mamolen, D.C.'s Opinion**

Plaintiff contends that the ALJ committed reversible error by improperly rejecting the opinion(s) of Dr. Mamolen in denying Plaintiff's claim for disability benefits.

Specifically, Plaintiff contends that the ALJ failed to address the following factors when weighing Dr. Mamolen's opinion for the purpose of determining Plaintiff's physical limitations—including: "(1) How long the source has known and how frequently the source has seen the individual; (2) How consistent the opinion is with other evidence; (3) The degree to which the source presents relevant evidence to support an opinion; (4) How well the source explains the opinion; (5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) Any other factors that tend to support or refute the opinion." *See,* SSR 06-03p, 71 Fed. Reg. 45,593, 45,595

(Aug. 9, 2006). *See also, Wall*, 561 F.3d at, 1052 (stating that failure to apply correct legal standards constitutes reversible error).

Tellingly, and relevant to this case, the above factors are set in the following context as expressly stated in SSR 06-03p:

> With the growth of managed health care in recent years and the emphasis on **containing medical costs**, medical sources who are not "acceptable medical sources," such as **nurse practitioners**, physician assistants, and licensed clinical social workers, have **increasingly assumed** a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are **important** and should be evaluated on **key issues such as impairment severity** and **functional effects**, along with the other relevant evidence in the file. (emphasis added.)

While the Court observes that an ALJ's application (and explanation) of the above factors is dependent on the facts of each case, the Court finds that there is no express reference to any of the above factors ((1)-(6)) in the ALJ's decision.[5] Without clearly identifying the factors that were relevant to Dr. Mamolen, how can the Court have any confidence that the factors were correctly applied? Notwithstanding there is discussion in the ALJ's decision that Dr. Mamolen's opinion was not given weight because it was "inconsistent with opinions from other medical doctors" (Tr. 51), the Court finds that there is little mention of which doctors, nor what parts of those opinions Dr. Mamolen's evidence was inconsistent with. This can hardly be a proper application of factor two. Indeed, the ALJ's analysis begins to resemble boilerplate reasoning

[5] The Court notes that the ALJ cited SSR 06-03p, but did not lay out those factors, nor provide any proper application of same.

which Tenth Circuit authorities seek to guard against, providing further basis for remand.[6] *See Hardman*, 362 F.3d at 679 (stating that "the use of [s]tandard boilerplate language will not suffice [because it] fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered" in the decision).

Moreover, the ALJ said that Dr. Mamolen's opinion was inconsistent with Plaintiff's own testimony. (Tr. 51.) But the Court questions this purported inconsistency because the ALJ had previously held that Plaintiff's testimony holds no weight. (Tr. 47.) Specifically, if Plaintiff's testimony is given no weight, it is impossible for any other opinion to be inconsistent with it because it effectively holds no evidentiary value in the record. Without further explanation of this inconsistency by the ALJ, this, too, constitutes error.

Finally, and in the alternative to above reasoning, if one were to read that the ALJ decision as indicating that the whole of Dr. Mamolen's opinion was inconsistent with the whole of the record, the Court finds that this is simply not the case. *See Flaherty*, 515 F.3d at 1070 (stating that a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings.")

As stated above, at least three doctors indicated that Plaintiff's range of motion limitation in the head/neck region. Similarly, in Dr. Mamolen's opinion, there is reporting

---

[6] Factor two requires assessment of "how consistent the opinion is with other evidence" in the record. See SSR 06-03p. And while the Commissioner could contend that the ALJ examined how *inconsistent* Dr. Mamolen's evidence was with other doctors in the record, the ALJ failed to appreciate how it was potentially *consistent* with others. It is this latter inquiry which is expressly mandated in the language of SSR 06-03p. (*emphasis added*.) The Court may be splitting hairs on this point, but when there is a potential absence in the record that the ALJ properly applied any of the other factors in SSR 06-03p, there is an expectation that the one factor that the ALJ did apply, would be properly applied (and with some level of transparency, which is clearly not the case here for the reasons stated above.)

of pain in the left side of Plaintiff's neck, with accompanying thoracic pain (Tr. 470-471).[7] This is consistent with other evidence in the record. And what's more, much of Dr. Mamolen's conclusions were drawn from evidence that was before doctors such as Dr. Van Buskirk related to Plaintiff's bulging discs *etc*. (*Id*.) Without delineating which parts of Dr. Mamolen's evidence were (in)consistent with the opinions of other doctors, it is, again, near impossible for this Court to engage meaningfully in review of the ALJ's findings, which justifies remand of the ALJ's decision. *See Langley* 373 F.3d 1116.

As such, the Court finds that the above deficiencies, in relation to Dr. Mamolen's opinion, demonstrate that the record has not been fully developed to enable this district court to meaningfully review the ALJ's findings—an error which warrants further consideration upon remand. See SSR 06-03p; *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004); *see also Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007).

**D. Harmless Error**

Finally, it is worth addressing the fact that the Commissioner tacitly raises the harmless error defense. (ECF No. 19 at 17-18.) The Commissioner argues that the ALJ's deficiencies were not harmful because the deficiencies were not prejudicial to Plaintiff. (*Id.*) The Court, however, disagrees—particularly in light of the deficiencies that have been addressed above.

Courts apply harmless error cautiously in the administrative review setting. *See Fischer–Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005). An error is only harmless

[7] Given that Dr. Mamolen had been treating the patient for two years, this error seems notable; ever more so in circumstances where non-medical opinions from chiropractors have taken on more significance in recent years as noted in SSR 06-03p.

when the Court can "confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way.' *Id.* at 733-34. Here, the Court has no confidence that the factual deficiencies in this case could be resolved another way because the deficiencies are critical omissions. As such, the ALJ's error is *not* harmless because the jobs identified by the vocational expert are not predicated on the correct limitations that derive from Drs. Van Buskirk, Gonseth and Mars' opinions.

Given that the ALJ gave considerable weight to these opinions—and then failed to provide the vocational expert with the precise physical limitations—the ALJ's error is anything but harmless. Indeed, the Court finds this type of error is more toward the significant end of the spectrum.

**D. Remaining Arguments**

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. Because the Court finds that the ALJ's RFC was not supported by substantial evidence and that this error alone requires remand, it need not address the other arguments raised by Plaintiff—particularly in circumstances where the Commissioner's harmless error argument has been rejected. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as

well as the ALJ, to consider the evidence and the issues anew.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 2nd day of January, 2014.

BY THE COURT:

William J. Martínez
United States District Judge